
**BC**

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

**RECEIVED**
2/2/2026
PJJ

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

1:26-cv-1209
Judge Sharon Johnson Coleman
Magistrate Judge Daniel P. McLaughlin
DIRECT / Cat. 2

HEIDI ERICKSON, Complainant

v.

STATE OF ILLINOIS, KWAME RAOUL, ILLINOIS ATTRORNEY GENERAL
DEPARTMENT OF PUBLIC HEALTH, SAMEER VOHRA, SECRETARY
LEGACY HEALTH CARE d/b/a/ WARREN BARR,
RANI STUTZ, V.P. LEGACY HEALTH CARE, Defendants

**VERIFIED AMENDED COMPLAINT**

## I. INTRODUCTION

1.  Americans with Disabilities Act, enacted three decades ago, the ADA aims to eliminate discriminatory barriers that prevent people with disabilities from fully participating in society, including accessing medical care. The ADA's reach covers nearly all healthcare entities open to the public, including the Defendants facilities. For healthcare providers, ADA compliance is not only a legal requirement—it's an essential ethical obligation to ensure all patients can receive quality care, Defendants' in particular Rani Stutz, V.P. Operations for Legacy Health Care of Skokie, IL knows and/or should know that regardless of their size or structure, all providers must ensure that their services are fully accessible to individuals with disabilities. This encompasses everything from the physical layout of facilities to communication policies, and even the digital accessibility of websites and electronic health records. Healthcare organizations like the Defendants' should view ADA compliance not just as a legal obligation, but as an opportunity to better serve their entire community.

## II. JURISDICTION

2.  Subject Matter Jurisdiction: This Court has subject matter jurisdiction over the present matter pursuant to 28 U.S.C. §§ 1331, 1343 and 1441, as the claims raised in this complaint involve questions of federal law best suited for the Federal Court and an Article III Justice[1]. This Honorable Court has subject matter jurisdiction over this controversy under 29 U.S.C. §§ 504, 794(a) and 42 U.S.C. §§12102, 12132, 12133, 12188 and 3613 Additionally, Declaratory and injunctive relief is authorized by 28 U.S.C. § 2201 and Rules 57 and 65 of the Federal Rules of Civil Procedure although while the US Supreme Court decided on June 8th 2023 that a private right existed to bring this suit under §1983 for violations of the FNHRA. *Health and Hosp.Corp. of Marion Cty. v. Talevski*, 599 US 166 (2023)(Held a private right of action under §1983 is available to enforce the Federal Nursing Home Reform Act "FNHRA" and codified in regulations like 42 CFR 1396r(c)(1) (A)(ii); and, is related to two previous matters in Judge Coleman's court 25-11263 and 25-13488.
.

---

[1] N.Jackson, 2015 When is an Agency a Court? A Modified Approach to State Agency Removal Under 28 USC §1441, 49 U.Mich. J.L.Reform 273 (2015). Available at: https://repository.law.umich.edu/mjlr/vol49/iss1/5, https://doi.org/10.36646/mjlr.49.1.when

VERIFIED COMPLAINT        *Heidi K.. Erickson v IDPH, Legacy Health Care et al*

3. This Honorable Court may provide the requested relief under 28 USC 2201(a), and is authorized to take preliminary and injunctive actions this Court may hear her on a preliminary injunction and restrain the Defendants from forcing the Plaintiff to provide her fingerprints as a unlawful search and seizure, and violations to her rights of privacy then restrain the Defendants from restricting the Plaintiff from community access and those indignations that naturally follow dehumanizing conduct.

4. Personal Jurisdiction: This Court has personal jurisdiction over the parties in this case because the defendant(s) have conducted business within the Northern District of Illinois and have sufficient minimum contacts with the State of Illinois. Such contacts are sufficient to permit the Court to exercise personal jurisdiction without offending traditional notions of fair play and substantial justice. Venue in the Northern District of Illinois is proper pursuant to 28 U.S.C. §1391(b)(1) because the Plaintiff and Defendants reside within the district and pursuant to 28 U.S.C. §1391(b)(2) because a substantial portion of the events or omissions giving rise to the claims occurred here.

5. Supplemental jurisdiction pursuant to 28 U.S.C. § 1337 pendent state laws that have made their way into this civil action.

## III. PARTIES

**Plaintiff**: Heidi K. Erickson is a temporary resident at one of Legacy Health Care's facilities in Chicago, IL an individual and a citizen of the State of Illinois, and fourth generational Illinoisan has been suffering interference of her program rights, benefits and access to property (both real and sentient) privacy, and while being exploited due to age and disability, under the color of law, officials have injured and deprived the Plaintiff protections guaranteed by the constitutions and laws currently in effect in the United States and the State of Illinois causing the Plaintiff to experience severe cardio-vascular injury and assault by unnamed Defendants, is also a qualified individual with a disability as defined by the ADA Titles II and III, 42 USC 12102, the Rehabilitation Act section 504 and the Fair Housing Act, and the Affordable Care Act..

**Defendants:**
A. State of Illinois, is a Sovereign in the United States of America Illinois is represented by Kwame Raoul, the Attorney General of Illinois, who is the chief legal officer of Illinois and authorized to sue and represent the State of Illinois Department of Public Health "IDPH" is an agency of the State of Illinois, with its principal office located at 535 W. Jefferson St., Springfield, IL 62761.

B. Legacy Health Care, doing business as Warren Barr, Legacy is a corporation organized and existing under the laws of Illinois, with its principal place of business at 3450 Oakton St. Skokie, IL 60076 and as a private healthcare provider Warren Barr operates a Skilled Nursing Home, accepts Medicare and Medicaid, is required to comply to the Center for Medicare Services Policies and Rules, is under the obligations of the Americans with Disabilities Act, Title III "ADA III", and the Rehabilitation Act Section 504 "RA", Fair Housing Act, "FHA" and Federal Nursing Home Reform Act "FNHRA"

C. Rani Stutz is an individual and a citizen of the State of Illinois, and is the Vice President of Operations at Legacy Health Care, with a business address at 3450 Oakton St. Skokie, IL 60076.

D. Warren, Barr of Lincoln Park, 2732 N. Hampton Ct. Chicago, IL 60614 corporation under the regulatory agency of the State of Illinois and Federal Nursing Home Reform Act, director Eli Batt.

VERIFIED COMPLAINT            *Heidi K.. Erickson v IDPH, Legacy Health Care et al*

## IV. GENERAL ALLEGATIONS

1. Today marks the 10th appellable day of a discriminatory decision issued by the Hearings Branch and Administrative Law Judge P. Reda, on 1/21/26 while denying the identified Plaintiff a litigant with a commnncation disability, denied any reasonable accommodations by the State as recommended by her and experts in dyslexia and her Orthorpedic surgeon for the reasonable accommodations during a hearing, to stay the matter until the 7th Circuit decides on the underlaying matter on appeal and for tying to conduct a hearing without reasonable accommodations in violation to Title II of the ADA.

2. For Months the Warren Bar and Leagacy Health care have discriminated against the Plaintiff retaliated aginst her based on disability discrimination and have violated numerous FNHRA laws, claimed to a police officer for the City of Chicago that the Plaintiff was trespassing on 12/5/25 when she was returning home, causing her to have uncontrolled hypertension and rushed to the hospital, and stayed therein for nearly 3 weeks refused to accept the Plaintiff back.

3. Since about July 1, 2025, Plaintiff having undergone extensive diagnostic testing at Northwestern Medical Center's main campus in downtown Chicago, IL for about a week, due to cardio-vascular disease awas transferred to a skilled nursing facility "SNF" aka Legacy for rehabilitation where she continued to experience Resistant Hypertension (RHT) that had been successfully treated with Animal Therapy from her specialized trained, personally owned from birth, Persian clowder.

4. Plaintiff, while experiencing a short rehabilitation period residing in one Skilled Nursing Facilities "SNF" of the Defendants' Warren Barr "WB" in the Chicago area, has repeatedly been discriminated and retaliated against her for her protected activities (including but not limited to requesting reasonable accommodations modifications of policy to enable her to use her mobility scooter inside and outside of the facilities; denying her the recommended use of her mobility device and for her reporting the facility to the Regulatory Agency of the State "IDPH" ) the Defendants including the State of Illinois, Department of Public Health, oversean by Sameer Vohra, MD and Legacy Health Care d/b/a Warren Barr and it's V.P. of Operations, Rani Stutz.

5. Warren Barr, a skilled nursing facilities (SNF) in Lincoln Park, IL accepts Medicare and Medicaid funds as long as it complies with all the rules, and policies of the Centers for Medicare Services and federal laws including but not all exclusive to Federal Nursing Home Reform Act "FNHRA", Americans and With Disabilities Act, Fair Housing Act, Rehabilitation Act, Affordable Care Act is regulated by Illinois Dept Public Health (IDPH) has health challenges and disabilities (defined by the Americans with Disabilities Act Title II 42 USC 12102, finds herself unjustly confined and stripped of her basic freedoms by the actions of Defendants Legacy and Stutz refuse to stop its unreasonable and retaliatory restrictions. While the regulatory agency, IDPH turns a blind-eye and fails to enforce the rules, regulations and polices of the Centers for Medicare and Medicaide Services, the laws in Federal Nursing Home Reform Act (FNHRA) 1396r(c)(1)(A)(ii) and actionable for private right of action under 42 USC 1983 as recently held by the US Supreme Court in *Health and Hosp.Corp. of Marion Cty. v. Talevski*, 599 US 166 (2023)(Held a private right of action under §1983 is available to enforce the Federal Nursing Home Reform Act "FNHRA") and codified in regulations like 42 CFR 1396r(c)(1)(A)(ii))

VERIFIED COMPLAINT          *Heidi K.. Erickson v IDPH, Legacy Health Care et al*

6. Plaintiff's numerous complaints with the facilities regulatory agency (IDPH) landed on deaf ears and blind eyes failed to make a finding or decision requiring the Defendant facility to stop the unnecessary and punitive restrictions, thus this Complaint is ripe.

7. As a direct and consequential result the three complaints by Plaintiff in July Defendants took retaliatory action and restricted the Plaintiff from not only all community access but also restricted her from the physical therapy she was required by her doctors at Northwestern to practicipate therein these restrictions were unnecessary and punitive against the FNHRA and the Illinois Nursing Home Act.

8. On or about 8/14/25 Legacy and Sturz demanded the Plaintiff to provide it with fingerprints and provided her with a form to sign "fee applicant" (attached form doesn't contain the information required by Biometric Information Privacy Act ).

9. As a direct and consequential result of the Plaintiff failing to sign and/or provide her fingerprints (also a 4th amendment violation of her rights) a Involuntary Discharge (eviction under Federal Nursing Home Act delivered by Stutz a skilled nursing facility that has not only disregarded her medical needs but also her dignity as a human being. Despite clear medical advice from her physicians underscoring no need for restrictive measures, Defendant has continuously and willfully imposed undue restrictions on Plaintiff's mobility and access to the community. This confinement is not a result of Plaintiff's condition but rather Defendant's repeated and intentional misconduct, including falsification of medical records and retaliatory actions for Plaintiff's attempts to assert her rights. Such egregious behavior, which has persisted even after multiple complaints for a peaceful resolution, followed by complaints to regulatory bodies, and issuance of retaliatory involuntary discharge notice and a demand for her personal information in violation of BIPA and made to make her appear criminal highlights a disturbing pattern of abuse and neglect by Defendants, violating Plaintiff's asserted rights and protections of both the US and IL Constitutions warranting this Court's immediate and decisive intervention including the acceptance of this properly filed Complaint.

10. The Illinois Dept of Public Health, Hearings Branch refused, failed and never accommodated the Plaintiff for her communications disability she requested reasonable accommdoations thereon in December 2025 and it ultimately issued a discriminatorily motivated decision without any interactive process as is required by Title II entities.

    HISTORICALLY

11. Plaintiff's transfer to Legacy was based on medical advice from specialist at Northwestern Medical Center and her treating physician, which recommended a recovery period at a facility that offered physical therapy and that accepted Medicare and Medicaid. Ms.Erickson's goals were to build strength, endurance and reduce stress, which under normal conditions would have been receiving at home, threat with her therapeutic aids known by the Defendants State of Illinois to be therapeutically superior to the rehabilitation through Legacy.

12. Upon admission to "WB," a data entry error occurred, Plaintiff attempted multiple times to correct and the Defendants failed, refused and/or ignored her requests which was then alleged corrected only upon the arrival of an IDPH investigator following Plaintiff's complaint to the Illinois Department of Health in July 2025, that lead to the SNF Legacy to retaliate against Erickson and issue punitive restrictions.

VERIFIED COMPLAINT          *Heidi K.. Erickson v IDPH, Legacy Health Care et al*

13. Plaintiff filed three complaints against Legacy in July 2025 at the Illinois Department of Health, after discussing these with the Ombudsman, in a desire to resolve these issues peacefully without resorting to escalating to a regulatory complaint (complaints filed directly with the regulatory agency IDPH) the Ombudsman discussed these three complaints freely with Legacy and told Plaintiff that his offices have "no teeth" for enforcement to cause the defendants to stop the restrictions, believes that was the real cause for the escalation (providing the Legacy with the Plaintiff's complaints) caused further restrictions and ultimately the Involuntary Discharge/transfer served on 8/14/25 and acts like an eviction under FNHRA but may only be given if there was cause specific to only six criteria and not as a result of protected activity by the Plaintiff as is alleged herein the adverse actions of Legacy.

14. Plaintiff in an attempt to resolve (protective activity) what appears to be an escalation concerning:
   a. Reporting the aforementioned data entry error (adverse action making it appear frivolous)
   b. Unlawful restrictions on Plaintiff's liberty & mobility, including denial of community access based on a pretext (fictitious medical record entry on 8/1/25) used by Legacy as justification for said escalating restrictions, violating Federal Nursing Home Reform Act provisions (adverse action), and
   c. Retaliatory restrictions 8/1/25 following Plaintiff's complaints to IDPH, violating Federal Nursing Home Reform Act provisions (adverse action), and
   d. Retaliatory Discharge 8/14/25 following Plaintiff's complaints to IDPH, violating Federal Nursing Home Reform Act provisions (adverse action).

15. On or about August 1st 2025, approximately ~36 days into Plaintiff's rehabilitation residency at "WB," the facility imposed two further restrictions:1. requiring Plaintiff to be escorted to trips outside the facility (no staff was made available except for the Director, who was never available on the weekends and who would only, and rarely if ever, only go as far as 1 block to Target during this entire period (late July thru late October 28 is 96 days – **3 full months**) subsequently "Legacy" failed to provide any staff for such escorts, effectively confining Plaintiff indoors.

16. In addition, "Legacy" also restricted Plaintiff from the physical therapy room downstairs for 60 days effectively curtailing Plaintiff from any rehabilitation/exercise necessary for her to recover. These features remain in effect to October 2025. In an attempt to continue Plaintiff's physical therapy recovery she ordered a stationary bike and with the help of staff brought it into her room, only to have the a >½ dozen staff enter her room like gangbusters and remove the stationary bike without consent and in the most distressful manner, prompting another complaint to the IDPH. Since this issue Plaintiff has been allowed back into the physical therapy room for therapy but her stationary bike hasn't been returned to her room.

17. On or about the 2nd week in August 2025 and after the Plaintiff's 3rd complaint had been investigated by the IDPH, the Facility gave Plaintiff an ultimatum requiring her to be fingerprinted and psychologically evaluated or face immediate discharge.

18. Plaintiff didn't sign the fingerprint release (a preprinted form "Fee Applicant" (Exh attached), and

19. Plaintiff sent the paperwork to the Ombudsman who followed up with an email that stated "*unfortunately fingerprinting is required*" (Exh.3). Nothing in the alleged release provided the information required by the Illinois Biometric Information Privacy Act BIPA specifically why it was required, who was to take the information, where, how long and other specifics set forth in BIPA i.e. 'the use and storage details'…

VERIFIED COMPLAINT          *Heidi K.. Erickson v IDPH, Legacy Health Care et al*

20. The very next day, August 14th, 2025 Rani Stutz, VP of Legacy Healthcare personally served Plaintiff with a 'Discharge Notice' (Exh.1) said it was "because I refused to provide my fingerprints Legacy was discharging me to another facility". Plaintiff rebuffed, she liked the Legacy and Rani, but disagreed that a fingerprints request was a lawful condition and otherwise a pretext used to retaliate and otherwise not an allowable condition to allege a discharge under FNHRA.

21. The Discharge Notice, dated 8/14/25 stated twice that it was a Federal Suit (Exh.1) and provided appeal rights information, including that it was enforcement by the State of Illinois, Plaintiff appealed and asked that the Federal suit be filed in the ILND, at Chicago, IL not in the ILCD Springfield, IL

22. Despite medical clearances from "WB's" doctor for Plaintiff to attend the Lake Front Air and Water Show August 16-17th 2025, no orders were found, and Plaintiff was denied even the simple pleasure of sitting outside on the facility's front porch for a short 20 minutes while the fly-overs drew excitingly close. Tauntingly one could hear them fly-over from inside the facility but no visuals were possible because all Legacy windows faced other stone buildings there was no TV broadcast or FlightRadar 24 available for the show. With all the advanced planning this restriction was egregious.

23. Plaintiff specifically requested to visit Lincoln Park Zoo on September 11, 2025, for a in-person live presentation by Jane Goodall, but was denied access, causing irreparable harm due to missing this last rare opportunity to have enjoyed the last public appearance in Chicago of Ms. Jane Goodall who recently passed away two weeks later on October 1st, 2025. The LP Zoo visit was one of Ms. Goodall's last public appearances, while Ms.Erickson is a big fan, and the proximity of the LP Zoo from Legacy is short <5 minute bus trip. The restriction was beyond all decency in a civilized world.

24. On October 8, 2025, Plaintiff's appearance for this Honorable Court's hearing on Plaintiff's removal was nearly catastrophic when at the last minute she was "allowed" to go to the court's hearing but required to be escorted, Plaintiff disagreed. Then embarrassed by the escort provided by Legacy during a necessary court appearance, because 1st the escort didn't have the correct address, she left without notifying Plaintiff, the escort yelled out-loud denouncing the Plaintiff in the public hallway. It was about 11am when the escort demanding "that she earned a lunch for all her work" causing confusion, distress, and generally was too much stress and distractions for the Plaintiff. The escort was focused on getting lunch stated repeatedly "I deserve a lunch for this" and was not well suited for what she was supposed to be doing.

25. Plaintiff has been denied access to local amenities such as a nearby Target store, Lincoln Park Zoo, Salvation Army, a volunteer cat shelter, the library, T-Mobile Store, and an Amazon Drop-off location, as a punitive measure for filing complaints with the IDPH against "WB."

26. The staff at Legacy took Plaintiff's stationary bike, necessary for exercise as per medical advice, further restricting Plaintiff's ability for necessary rehabilitation, and to maintain physical health.

27. Plaintiff's purchase of a scooter to aid her with mobility is under threat and interference by "WB," which may continue to unlawfully restrict Plaintiff's community access and mobility rights as protected under 42 USC §1396r(c).

28. Plaintiff has not been able to purchase her necessities at a reduced cost from the normally accessible Salvation Army (clothes and other essentials) and had to pay much higher prices for the same items she was forced to purchase through her Amazon account.

29. Plaintiff has been subjected to unauthorized and invasive fingerprinting procedures without adequate information on the protection, duration of storage, or access to such biometric data, in violation of the Biometric Information Privacy Act and potentially infringing upon her 4th and 14th Amendment rights.

30. Documentation supporting these claims includes a series of legal documents and complaints filed by Plaintiff, notably marked in the records as attach hereto at EXHIBIT 1, 2 and 3. Includes the "Discharge Notice" is like an 'eviction notice' and is required to be limited to one of six possible causes under the FNHRA – this Notice is for failing to comply with a fingerprinting demand and is not one of the six causes under the FNHRA violated Ms.Erickson's 4th and 14th Amendment rights this WB Notice Exhibit #1, and fraudulent medical record entry #2 together with Exh.#3 email from the Ombudsman noting "*fingerprinting is necessary*" are the evidentiary support for the allegations of misconduct and statutory violations by Defendants causing injury to the Plaintiff and a federal question as to her rights under the 4th and 14th Amendments.

31. These documents (Exh. #1, #2 and #3) coupled with the factual allegations contained herein form the basis of this lawsuit, wherein Plaintiff seeks judicial relief for multiple violations of federal statutes designed to protect the rights and dignity of residents like the Plaintiff who have no place to go other then under the skilled nursing facility which shouldn't be Ms.Erickson's only option!

## V  FACTUAL ALLEGATIONS SUPPORTING THE CLAIM:

32. Defendant, by restricting Plaintiff's access to the community and essential services, engaged in conduct intended to isolate and control Plaintiff, which is extreme and outrageous given Plaintiff's dignity, autonomy, intellect, medical condition and reliance on community interaction for emotional and physical well-being. Plaintiff needed to go to the SSA Office and her Bank of America, was restricted.  Plaintiff thrives with her Animal Therapy, secluding her w/o acts to deprive her self worth

33. She choose the WB to enjoy the LP Zoo and Park – WB restricts her freedom, liberty and dignity against the intentions of the Constitution, the Congress in FNHRA and other laws.

34. Defendant fabricated medical records to justify unwarranted restrictions on Plaintiff's movements, freedom and financial independence by controlling her movements including denying Plaintiff the opportunity to attend significant community events such as the Lincoln Park Zoo event with Jane Goodall, which was particularly meaningful to Plaintiff and known by Defendant to be so.

35. Defendant's actions, including the public humiliation experienced during the escorted court appearance where the escort left Plaintiff unattended and couldn't be found, were extreme and outrageous, designed to belittle and isolate Plaintiff further.

VERIFIED COMPLAINT          *Heidi K.. Erickson v IDPH, Legacy Health Care et al*

36. Defendant's actions, including the personal abuse, mental anguish, humiliation and depravity experienced during the CNA's abuse on October 4th, 2025 was meant to harm Plaintiff.

37. Defendant's actions, including the restricting her access to the SSA Offices necessary to perform and obtain documents it required a personal visit from Plaintiff now shut down so no office of the SSA is Staffed – the papers required by her mortgage holder the USDA, and now they are closed too, has prevented the Plaintiff to obtain a mortgage stay. The injury recognized by this maybe foreclosure which the Plaintiff wishes to avoid, and could have if she had gotten the paperwork necessary before the government shut-down, but the Plaintiff has been trapped inside since late July ~8/1/25.

38. The cumulative effect of Defendant's actions, including the baseless and retaliatory restrictions imposed on Plaintiff's mobility and social interactions, the falsification of medical records, and the public humiliation, caused Plaintiff severe emotional distress, manifesting in exacerbated health issues like insomnia, hypertension, and significant mental anguish and ability to manage pain from arthritis.

39. The distress suffered by Plaintiff has been so severe that it required medical intervention, significantly impacted Plaintiff's daily functioning, and was of a nature that no reasonable person could be expected to endure, and the Defendants could have prevented or stopped it at anytime since the IL-AG's offices heard of it on Plaintiff's request for relief or about June 24th, 2025 from Caleb Briscoe, assistant AG

## VI. CAUSES OF ACTION:
### COUNT IA: 42 U.S.C. §1983
### FEDERAL NURSING HOME REFORM ACT
### 1396r(c)(1)(A)(ii) VIOLATION OF RESIDENT RIGHTS UNDER FNHRA

1. Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

2. Under 42 U.S.C. § 1983 provides a private right of action for individuals who are deprived their rights from state officials and/or those acting under the color of law, who during their activity deprives a person of any rights…secured by the Constitution and laws. The WB and Legacy Health Care receives Medicare and Medicaid dollars satisfy the requirements for this actions Defendants, a facility Legacy and "Legacy Health Care" are regulated by the state (IDPH) or IL aka a skilled nursing facilities SNF operated by State and local government entities, see *Health and Hosp.Corp. of Marion Cty. v. Talevski*, 599 US 166 (2023)(Held a private right of action under §1983 is available to enforce the Federal Nursing Home Reform Act "FNHRA") and codified in regulations like 42 CFR 1396r(c)(1)(A)(ii), a skilled nursing facilities (SNF) are mandated to uphold the rights of residents, including the right to be free from any physical or mental abuse, corporal punishment, and involuntary seclusion that is not medically necessary for the resident's well-being.

3. The Plaintiff suffers from repeated punitive restrictions by Defendants, whose, received both Medicare and Medicaid reimbursements has violated 42 U.S.C. § 1396r(c)(1)(A)(ii) by imposing restrictions on Plaintiff's mobility and access to the community without a valid medical justification

and following Plaintiff's protected activities in short time of filing numerous complaints with the agency who regulates the facility IDPH.

4. IDPH has failed in its duty to protect the Plaintiff. Specifically, despite the absence of any medical necessity as confirmed by WB's attending physician, the facility has restricted Plaintiff's ability to leave the facility, thereby constituting involuntary seclusion their actions under the color of law are also a fundamental deprivation of liberty and freedom of movement.

5. The Defendant's actions are further evidenced by the imposition of escorted trips only, coupled with a failure to provide any escort[2], effectively confining Plaintiff within the facility. This action was taken despite medical clearances from the facility's doctor, who found no medical reason to restrict Plaintiff from attending community events such as the Lake Front Air and Water Show in mid-August and a significant event at Lincoln Park Zoo on September 11, 2025.

6. Additionally, Legacy has created and utilized fictitious medical entries in Plaintiff's records as a pretext to justify these unwarranted restrictions on Plaintiff's movement and activities, further violating 42 U.S.C. § 1396r(c)(1)(A)(ii). These false entries have been used to deny Plaintiff access to the community and to retaliate against Plaintiff for previous complaints filed against the facility, as evidenced by the ongoing denial of community access after such complaints were made.

7. Since it was recorded, August 1st 2025 and every week thereafter for leave to go to the park, every other week in September 4th, 17th, Oct.7th, 17th, 24th, 27th 2025 along with the leave Plaintiff has requested leave weekly.

8. In addition Plaintiff has requested the fictious medical record of 8/1/25 and all others made as a result thereof to be corrected and deleted from her medical records. Defendants have refused to correct.

9. The restrictions mentioned above and those retaliatory actions and inactions taken by defendants, under the color of law, while receiving Medicare and Medicaid reimbursements have directly infringed upon Plaintiff's rights under the Federal Nursing Home Reform Act to be free from unwarranted and non-consensual seclusion, thereby knowingly and intentionally causing significant emotional distress and exacerbating existing health conditions.

10. The Defendant's actions have not only deprived Plaintiff of statutory rights but have also isolated Plaintiff from social interactions and activities that are crucial for mental and emotional well-being, and dignity contrary to the protections afforded by 42 U.S.C. § 1396r(c)(1)(A)(ii).

11. As a result of the Defendants actions the Plaintiff has been injured and suffers the harm and loss of her liberty.

12. The Defendants punitive violations represent a systemic failure by Legacy to adhere to the federally mandated standards set forth in the Federal Nursing Home Reform Act, necessitating judicial intervention to rectify ongoing violations of Plaintiff's rights and to prevent further harm.

---

[2] WB staff has advised "they are not paid" and/or reimbursed for the time they are "escorting" thus the restriction is total and if a staff member escorts when they aren't being paid it sounds like an insurance liability aswell.

VERIFIED COMPLAINT          *Heidi K.. Erickson v IDPH, Legacy Health Care et al*

**COUNT IB: 42 U.S.C. §1983**
**FEDERAL NURSING HOME REFORM ACT**
**UNNECESSARY RESTRAINT (INVOLUNTARY SECLUSION) UNDER FNHRA 42 U.S.C.**
**§1396r(c)(1)(A)(ii)**

13. Plaintiff incorporates the above paragraphs in this Complaint by reference as though fully rewritten..

14. The Plaintiff has been restricted movement to go outside for no reasonable medical and as a punitive measure to punish her for complaints she filed with the IDPH in violation of the Federal Nursing Home Reform Act (FNHRA), specifically under 42 U.S.C. §1396r(c)(1)(A)(ii), mandates that a resident has the right to be free from physical or mental abuse, corporal punishment, and involuntary seclusion imposed for purposes of discipline or convenience and not required to treat the resident's medical symptoms.

15. Defendants Legacy, imposed restrictions on Plaintiff that constituted involuntary seclusion, which was not required to treat any medical symptoms of the Plaintiff.

16. Defendant IDPH knew of the above unreasonable restrictions and failed to do nothing to prevent, correct and/or stop the unnecessary physical and mental abuse created by the restrictions and the Plaintiff suffered injuries.

17. Specifically, Plaintiff was restricted from accessing community activities and was confined to the facility under the pretense of fictitious medical entries(Exh.2) in the facility's records, which falsely and intently documented medical justifications for such restrictions, Legacy refused to correct.

18. Plaintiff was denied the opportunity to attend external events, including a significant event at Lincoln Park Zoo on September 11, 2025, despite having no medical condition or symptoms that necessitated restriction from attending the event, as evidenced by the approval from the attending physician at WB who confirmed that no medical restrictions were necessary.

19. Furthermore, the facility failed to provide necessary escort staff for Plaintiff to attend external events, or provide her with the necessities she required the stimulation of visiting the park and thereby effectively imposing a condition of seclusion. This action was taken despite previous instances where in June and July Plaintiff was managing trips to the pharmacy, store, Salvation Army, the Park and the Chicago bus system without incident (physical or behavioral) that would require such restrictions.

20. The actions of restricting Plaintiff's movement were not based on any legitimate medical need but were instead used as a method of discipline and control, particularly following Plaintiff's filing of complaints against the facility that are protected activities.

21. The imposition of these restrictions and the resulting involuntary seclusion of Plaintiff directly contravenes the rights afforded under 42 U.S.C. §1396r(c)(1)(A)(ii), as they were neither necessary or valid based on any medical treatment plan of Plaintiff nor were they consented to by Plaintiff.

22. As a direct result of these actions, Plaintiff suffered significant emotional distress, exacerbation of health conditions, and deprivation of personal liberty and autonomy.

VERIFIED COMPLAINT        *Heidi K.. Erickson v IDPH, Legacy Health Care et al*

23. The unnecessary and unlawful restraints imposed on Plaintiff by Defendant were without justification and were in direct violation of the FNHRA, entitling Plaintiff to relief under this claim.

**COUNT IC: 42 U.S.C. §1983**
**FEDERAL NURSING HOME REFORM ACT**
**WRONGFUL TRANSFER OR DISCHARGE UNDER FNHRA 42 USC §1396r(c)(2)(A)et seq**

24. Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

25. The Federal Nursing Home Reform Act (FNHRA), codified at 42 U.S.C. §1396r(c)(2)(A), prohibits the transfer or discharge of a resident from a skilled nursing facility except for specific reasons that ensure the welfare and safety of the resident and others.

26. The facility must provide sufficient preparation and orientation to residents to ensure a safe and orderly transfer or discharge, as required under the same statute. Defendant on 12/3/25 claimed a false pretense and executed fabricated legal papers to claim that the Plaintiff caused an incident and on 12/5/25 when the Plaintiff returned home, and after she appealed the 12/3/25 incident the Warren Barr, and Eli Batt claimed Plaintiff was trespassing to two police officers from the Chicago Police Deptment causing the Plaintiff to suffer a heart attach and an uncontrollable hypertensive crisis.

27. Plaintiff alleges that the facility, Legacy, attempted to transfer or discharge Plaintiff in violation of 42 U.S.C. §1396r(c)(2)(A) by fabricating a reasons not substantiated by medical necessity or the true welfare of the Plaintiff, that was not part of the six available discharge possibilities within the statute and made available if the Plaintiff had not filed three valid complaints with the IDPH, the regulatory body for the Defendants, because the Plaintiff believes and shall prove herein that her protected activity caused the retaliatory conduct evidenced herein.

28. Specifically, the facility Legacy in their "Discharge Notice" (Exh.1) cited non-existent medical conditions and/or behavioral issues in Plaintiff's records 'because she would not agree to being fingerprinted, whether or not the State of Illinois demanded it or the WB demanded the fingerprinting as grounds for restricting community access and proposing transfer or discharge, which Plaintiff contends were pretextual and retaliatory conditions and not made part of the statutory framework of the FNHRA and considered retaliatory as adverse actions following Plaintiff's protected activity.

29. Plaintiff further alleges that these actions to issue a "Discharge Notice" Exh. 1 (adverse action) was issued in a direct retaliation for Plaintiff's complaints (protected activity) about the facility, including but not limited to complaints filed with the Illinois Department of Public Health regarding violations of federal and state regulations, and those that claimed she was being forced to provide her fingerprints depriving her of the protections of the 4th Amendment and against BIPA.

30. On or about mid to late July 2025, following Plaintiff's filing of multiple grievances against the facility (protected activity), Legacy began to impose severe restrictions on Plaintiff's mobility and community access, culminating in a proposed transfer or discharge noted in facility records evidenced here at Exh. 1 and identified as a adverse action made unlawful by state and federal laws.

31. These restrictions included barring Plaintiff from attending community events such as the Lake Front Air and Water Show and a significant event at Lincoln Park Zoo, despite medical clearance and no

documented medical or behavioral justification for such restrictions, Ms.Erickson has been secluded for >96 days, since Aug.1st 2025.

32. The facility's documented reasons for these actions were contradicted by the assessments of medical professionals (Dr. Lodi) and the lack of any rule violations (**no** policy or rules were ever given to Plaintiff even upon admission) or documented behavioral problems that would warrant such severe restrictions or a transfer/discharge under federal law.

33. Plaintiff contends that the facility's actions were directly intended to punish Plaintiff for the exercise of rights to file grievances and were therefore in violation of 42 U.S.C. §1396r(c)(2)(A), which protects residents from retaliatory transfer or discharge.

34. The facility Legacy failed to provide Plaintiff with the legally required notice and detailed reasoning for transfer or discharge, further violating the FNHRA's stipulations for procedural safeguards under 42 U.S.C. §1396r(c)(2)(A).

35. The IDPH failed to provide Plaintiff with the legally required hearing in federal Court (ILND) on discharge notice including a detailed reasoning for transfer or discharge, further violating the FNHRA's stipulations for procedural safeguards under 42 U.S.C. §1396r(c)(2)(A).

36. The State of Illinois failed to provide Plaintiff with the legally required hearing in federal court (ILND) on discharge notice including a detailed reasoning for transfer or discharge, further violating the FNHRA's stipulations for procedural safeguards under 42 U.S.C. §1396r(c)(2)(A).

37. All the Defendants demanded Plaintiff to provide her fingerprints depriving the Plaintiff her 4th and 14th Amendment protections before transfer or discharge, further violating the FNHRA's stipulations for procedural safeguards under 42 U.S.C. §1396r(c)(2)(A) and those under the Constitutions.

38. As a direct and proximate result of the wrongful actions by the Defendants separately, Plaintiff suffered and continues to suffer significant emotional distress, exacerbation of medical conditions, and deprivation of legal and personal rights.

39. The actions of the facility Legacy and the IDPH, as described herein above, were without merit as to the true welfare and safety needs of the Plaintiff and were instead motivated by unlawful retaliation and intent to discharge Plaintiff for non-compliant reasons under FNHRA and the laws in Illinois

## COUNT ID: 42 U.S.C. §1983
## FEDERAL NURSING HOME REFORM ACT
### §1396r(c)(1)(A)(ii) FRAUD AND MISREPRESENTATION UNDER FNHRA

40. Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

41. Defendants Legacy, Legacy and Ms.Stutz maintain in their records a disputed false medical record (at pg 361 and all others related thereto this event) entered by Erin at 1600 made a false representation of a material fact and appears to be the "reasoning for any restrictions".

42. The facilities 3rd party subcontractor a therapist who Plaintiff never meet, falsely documented an "evaluation" on 8/1/25 into the resident's medical records, claiming that the resident was verbally aggressive and mentally unstable, which was used to justify restrictions on the resident's mobility and community access. When it's a "she-said-she-said scenario is a illegitimate reason and has no government interest as Ms.Erickson has a right to refuse a evaluation. If the therapist doesn't recognize that right then there is a problem with the therapists adding additional information made to make-believe an evaluation occurred in order to substantiate a billing practice, is fraud. The basis for Ms.Erickson's restrictions is a false and fraudulent medical record entry. Plaintiff denied that she had ever meet with said therapist and instead "was not available" for the time and date the therapist wanted to meet there is no email record about this meeting/evaluation. No evaluation had been done, and the therapist's entry that any evaluation had been conducted is wrong and misleading, and was probably used to justify billing for an evaluation, when none had occurred. Plaintiff admits she had answered "not available" and then when the person lingered asked that person to "please leave" as she has a right to refuse to meet with any staff or therapist. Ms .Erickson denies that any "evaluation" ever took place on 8/1/25 and that the language alleged in that medical record is fiction, and didn't occur. Whether that therapist charged for her alleged evaluation is another issue. But the problem is that the therapist made a defamatory, and incorrect and rather damaging entry from a non-event and/or an event of right – the right to refuse. Ms.Erickson has been trying to correct the wrongful false entry since it was brought to her attention, after the restrictions, since 8/1/25 nearly 3 months is excessively long punishment and should be considered as a refusal to correct a medical entry.

43. Plaintiff reported to the Director another incident of a CNA who disparaged the Plaintiff on October 4th, 2025 who talked loudly enough for others to hear about the Plaintiff medical record regarding an alleged diagnosis, and then told the Plaintiff to "*go kill your cats*" (Plaintiff is the only resident with about 10 stuffed plush felines on her bed and another 4 on her floor) reported to the director immediately (9:30pm), who asked the CNA to leave immediately (10pm) after verifying the incident with the Nurse who was there as a witness. Meaning the Defendants have attempted to correct but has miserably failed to correct this issue of restricting Plaintiff's access to the community outside.

44. Plaintiff has repeatedly requested (to the Director himself in August, September and October 2025) and to the Defendant Rani Stutz herself on 10/7/25; that the medical records entry of Erin on 8/1/15 on pg 361 (Exh.2) be removed, redacted and a replacement "refusal to evaluate" be the only entry to reflect anything by that therapist for the event, date and time. As the timing of this filing Erin has also reported created another false medical record on 9/2/25 following Plaintiff's report on 9/1/25 of a Rx error where the nurse refused to provide a pain prescriptive medicine his entire shift on 9/1/25 during training of the younger student nurse, influencing the next generation that restricting Rx of patience is a practice that nurse condones.

45. Defendant knew that the representation was false at the time it was made. The medical records were altered to include fictitious statement and a negative medical entries that were used as a basis to impose unnecessary restrictions on the Plaintiff, despite medical staff, including the facility's doctor, affirming that no such restrictions were medically necessary.

46. Defendant made the representation with the intention that Plaintiff would rely on it. The false entries in the medical records were intended to mislead any reviewing bodies or authorities, such as Medicare, and to justify the facility's unlawful restrictions on the Plaintiff's rights to access the community and engage in personal activities.

47. Plaintiff did rely on the representation. Plaintiff and Medicare relied on the accuracy of the medical records, which are typically trusted to reflect truthful and accurate medical assessments and treatments.

48. Plaintiff suffered damages as a result of relying on the false representation. As a direct consequence of the fraudulent records, Plaintiff has been unlawfully secluded within the facility, denied essential personal freedoms, subjected to emotional distress, and whether Medicare or Medicaid was billed for unnecessary and unrendered services by this therapist, constituting fraudulent billing, has not been determined as of yet or the defendants have not shared this information.

49. The conduct of Defendants to seclude Ms.Erickson has been intentional, and such malfeasance directly led to the injuries and damages sustained by Plaintiff, including malaise, sadness, loss of stim. The fraudulent actions and misrepresentations by the facility not only breached ethical standards but also legal duties owed to the Plaintiff, resulting in significant personal and financial harm.

50. Because of the actions and inactions of the Defendants the Plaintiff has suffers proximate, consequential and extreme damages.

## COUNT II:
## 42 U.S.C. § AMERICANS WITH DISABILITIES ACT TITLE II

51. Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

52. In the United States District Court for the Northern District of Illinois, a claim for Disability discrimination requires that a plaintiff to establish that she is an otherwise disabled individual qualified to seek a private right of action under the American's with Disabilities Act and that the defendant knew the Plaintiff to be disabled has discriminated against her due to her disability in aspects of its programs, services and access thereto it's governmental actions involved with the plaintiff excluding her and/or denying her reasonable accommodations in accessing it's purported programs, services and/or functions and/or benefits.

53. The conduct of Defendants, a local government actor to exclude Ms.Erickson has been intentional, and based on her disabilities while such malfeasance directly led to the injuries and damages sustained by Plaintiff, including malaise, sadness, loss of stim. The fraudulent actions and misrepresentations by the facility not only breached ethical standards but also legal duties owed to the Plaintiff, resulting in significant personal and financial harm.

54. Because of the actions and inactions of the Defendants the Plaintiff has suffers proximate, consequential and extreme damages.

## COUNT III:
## 42 U.S.C. § AMERICANS WITH DISABILITIES ACT TITLE III

55. Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

56. In the United States District Court for the Northern District of Illinois, a claim for Disability discrimination under Title III requires that a plaintiff to establish that she is an otherwise disabled individual qualified to seek a private right of action under the American's with Disabilities Act and that the defendant, a private entity open to the public, knew the Plaintiff to be disabled and has denied her access and/or other reasonable accommodations has discriminated against her due to her disability

VERIFIED COMPLAINT          *Heidi K.. Erickson v IDPH, Legacy Health Care et al*

in aspects of its programs, services and access to it to equally enjoy the benefit of it's public persona and actions involved with the plaintiff excluding her and/or denying her reasonable accommodations in accessing it's purported public programs, services and/or functions and/or benefits any non-disabled member of the public would and/or could enjoy. Plaintiff claims for relief will include a preliminary injunction is sought, and the Plaintiff intend to file a Preliminary Injunction pleadings.

57. The conduct of Defendants, a short-term and/or long-term skilled nursing facility, actions to exclude Ms. Erickson has been intentional, and based on her disabilities while such malfeasance directly led to the injuries and damages sustained by Plaintiff, including malaise, sadness, loss of stim. The fraudulent actions and misrepresentations by the facility not only breached ethical standards but also legal duties owed to the Plaintiff, resulting in significant personal and financial harm.

58. Because of the actions and inactions of the Defendants the Plaintiff has suffers proximate, consequential and extreme damages.

**COUNT IV:**
**42 U.S.C. § AMERICANS WITH DISABILITIES ACT TITLEs II & III**
**RETALIATION**

59. Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

60. In the United States District Court for the Northern District of Illinois, Plaintiff's claims for relief and will include a preliminary injunction and the Plaintiff intend to file a Preliminary Injunction pleadings.

61. Because of the actions and inactions of the Defendants the Plaintiff has suffers proximate, consequential and extreme damages.

**COUNT V:**
**29 U.S.C. § 504 REHABILITATION ACT**

62. Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

63. In the United States District Court for the Northern District of Illinois, a claim for a claim for relief and preliminary injunction is sought, and the Plaintiff intend to file a reliminary Injunction pleadings.

64. Because of the actions and inactions of the Defendants the Plaintiff has suffers proximate, consequential and extreme damages.

**COUNT VI:**
**U.S.C. § FAIR HOUSING ACT**

65. Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

66. In the United States District Court for the Northern District of Illinois, a claim for Because of the actions and inactions of the Defendants the Plaintiff has suffers proximate, consequential and extreme damages.

**COUNT VII:**
**29 U.S.C. §1557 PATIENT PROTECTION and AFFORDABLE CARE ACT**

67. Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

VERIFIED COMPLAINT          *Heidi K.. Erickson v IDPH, Legacy Health Care et al*

68. In the United States District Court for the Northern District of Illinois, a claim for Because of the actions and inactions of the Defendants the Plaintiff has suffers proximate, consequential and extreme damages.

**COUNT VIII:**
**42 U.S.C. §1983  INVASION OF PRIVACY**

69. Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

70. In the United States District Court for the Northern District of Illinois, a claim for invasion of privacy requires the plaintiff to establish that the defendant intruded upon the plaintiff's seclusion (privacy) in a way that would be highly offensive to a reasonable person.

71. Plaintiff alleges that the defendant, through its employees and agents, engaged in actions that intruded upon the plaintiff's private affairs without consent. Specifically , as mentioned hereinabove, on October 4th, 2025, at 9:30pm Certified Nursing Assistant (CNA) named Mia employed by the defendants read aloud the plaintiff's sensitive medical records within earshot of individuals who were not authorized to access this information and then told the Plaintiff to "*go kill your cats*" Plaintiff is the only resident with 10+ plush felines on her bed, four others on the floor including two plush Pallas (Manul) cats named after Peter Simon Pallas a German naturalist from 1776 who first identified the Manul. This unusual cat's eyes and other features are similar to that of the Persian feline, although behaviorally totally different, they use to be exhibited at the Lincoln Park Zoo until their resident past around 2016, as apart of Ms.Erickson civic duty is interest in helping the LP Zoo obtain a new pair of Pallas' cats from Russia in an attempt to reopen the exhibit for the public once again, is part of her dedication to her civic duties she hopes to help the public learn more about felines wild and domesticated.

72. This unauthorized disclosure occurred on multiple occasions, most notably on October 4th, 2025, in a common area of the Skilled Nursing Facility at the main desk, where other residents and visitors could overhear details about the plaintiff's medical condition, treatment, and personal history, was inappropriate.

73. The nature of the information disclosed included details of the plaintiff's medical diagnoses, treatment plans, and personal identifiers, all of which are classified as protected health information under applicable privacy laws.

74. The defendant's actions in allowing unauthorized access to and disclosure of the plaintiff's private medical information were not accidental but rather due to a failure to implement reasonable safeguards to protect the plaintiff's privacy, thereby constituting an intrusion.

75. The intrusion by the defendant was highly offensive as it disregarded the plaintiff's privacy rights and exposed sensitive health information to individuals who had no lawful basis to receive such information.

76. As a direct and proximate result of the defendant's actions, the plaintiff suffered anguish, humiliation, and distress, knowing that their private health information had been exposed to the public without their consent.

VERIFIED COMPLAINT          *Heidi K.. Erickson v IDPH, Legacy Health Care et al*

77. The actions of the defendant were intentional, willful, and malicious, showing a reckless disregard for the plaintiff's right to privacy and the confidentiality of their medical information.

78. By these actions, the defendant violated the plaintiff's right to privacy, warranting compensatory and punitive damages against the defendant for the harm caused to the plaintiff.

79. Because of the actions and inactions of the Defendants the Plaintiff has suffers proximate, consequential and extreme damages.

**COUNT IX: 42 U.S.C. §1983**
**DEFAMATION**

80. Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

81. Defendant made a false statement about the Plaintiff, as recorded in her medical records at page 361 on 8/1/25 and on 9/2/25 and other dates in other multiple entries of its medical records.

82. The statement was published to a third party, a CNA named Mia, and others unbenounced to the Plaintiff at the time of writing this pleading, meaning that someone other than the Plaintiff heard or saw the statement, as a full 60 days have past between the 8/1/25, 9/2/25 and 10/4/25 dates and Mia's employment was infrequent and short-lived.

83. The statement caused injury to the Plaintiff's reputation and hurt her emotionally.

84. The statement was not privileged.

85. On August 1st, 2025 [therapist refused to accept Plaintiff's unavailability], September 2nd [a student nurse alleged Plaintiff thru a plastic medicine cup at her feet when she was on the telephone with DHS reporting a complaint] and October 4th 2025 Mia,  a CNA [yelled out loud portions of Plaintiff's medical record] then told Plaintiff to "*go kill your cats*" Defendants permitted these undertrained staff members to have contact with the Plaintiff and she was harmed while it knew or should have known these "staff members" were undertrained, a therapist, a social worker and a CNA respectively at the skilled nursing facility Legacy made false statements regarding Plaintiff that were unfounded, documented falsely in medical records refuses to correct same and uses those to keep the Plaintiff restricted.

86. These statements were communicated to various members of the facility staff and potentially to other residents and visitors, thereby satisfying the publication requirement.

87. The false statements have injured the Plaintiff's reputation, both within the immediate community at the nursing facility and potentially extending to future healthcare providers and facilities, by portraying the Plaintiff as mentally unstable and uncooperative in falsifying medical records and attempting to keep the Plaintiff secluded inside its facility in order to use less staffing and act as a deterrent punishment for the Plaintiff's numerous complaints (protected activity) to the IDPH.

88. The statements were made without any privilege, as they were not a part of any official proceeding or within a protected context but were rather communicated informally among staff and others without any basis of truth.

89. As a direct result of these defamatory statements, the Plaintiff has suffered emotional distress, further exacerbation of health conditions, and harm to reputation, all of which are direct injuries resulting from the defamation, including a justification defense on the punishment of seclusion.

90. Because of the actions and inactions of the Defendants the Plaintiff has suffers proximate, consequential and extreme damages.

**COUNT X: 42 U.S.C. §1983**
4TH AND 14TH AMENDMENTS TO THE US CONSTITUTION
**ILLINOIS BIOMETRIC INFORMATION PRIVACY ACT**
Alternatively under the laws in Illinois

91. Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

92. On or about August 11 – August 14th 2025 the Defendants asked then demanded the Plaintiff to sign a release form (preprinted *fee applicant* form) that the Plaintiff emailed to the ombudsman, who replied with a short response "*unfortunately, fingerprinting was required*" even though the Plaintiff pointed out that the preprinted form was for a "fee applicant" not specifically applicable the ombudsman advised Plaintiff it was applicable and unavoidable. Requiring Plaintiff to have her fingerprints recorded, and whether the form included the name of the company that would record her fingerprints was there on the form the form was the only information she was given as to this fingerprint demand. At not time was there any information as to how and/or where her fingerprints would be stored, for how long and no specific description of the data's purpose and retention schedule. Furthermore, the State of Illinois was apparently demanding that the facility defendants were 'requiring' Plaintiff and depriving her 4th Amendment rights and those of BIPA.

93. The BIPA includes a private right of action to enforce the Act, the allegations herein demonstrate a violation of the BIPA

94. Plaintiff believes that the all the defendants were requiring her to not only sign a consent form but base the security of her placement in the current facilty WB or be subject to Involuntary Discharge placing Plaintiff under duress for her safety.

95. On August 14th, 2025 Defendant Ms.Rani Stutz, on behalf of Legacy, and Legacy and apparently the State of Illinois served the Plaintiff in person the documents that were allegedly an Involuntary Discharge Notice (Exh. 1) all 7 pages given to her on behalf of the State of Illinois and IDPH handed to her by personal service by Rani Stutz, as verified by Rani's signature on page 3 of 7 (Exh.1., 3/7) Discovery will provide the exact proof and the Plaintiff will amend.

96. Ms.Erickson sent the Ombudsman a copy of all the pages and soon thereafter Chicago Legal Aid called her and explained they would represent her if she signed the fingerprint waiver which was allegedly the "fee waiver" form, and only if she provided her fingerprints. Legal Aid had no other defense like the fact that the defendants had not prescreened her before she had arrived on or by July 1st 2025, as required, and or within a reasonable time like 10-30 days. Or that to force someone to give their fingerprints was a search and seizure violation of her 4 Amendment protections under the US Constitution, and those under the Illinois Constitution's right to privacy.

97. As a direct result of these aforementioned actions, including the Involuntary Discharge the Plaintiff has suffered emotional distress, further exacerbation of health conditions, and harm to her personal feelings of safety and dignity, all of which are direct injuries resulting from the BIPA and Involuntary Discharge (eviction) for failing to relinquish her personal private Biometric data – Plaintiff doesn't use a fingerprint or retina release for her phone or computer for the strict reason to keep her personal Biometric information personal.

98. Because of the actions and inactions of the Defendants the Plaintiff has suffers proximate, consequential and extreme damages.

**COUNT XI: 42 U.S.C. §1983**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
Alternatively under the laws in Illinois

99. Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

100. All the Defendants including the State of Illinois and IDPH as well as the facility Defendants separately and jointly intended to inflict emotional distress, or knew that emotional distress was certain, or substantially certain, to result from their conduct.

101. The conduct complained of herein above and manner effecting the Plaintiff personally that came from that conduct was extreme and outrageous, beyond all possible bounds of decency, and utterly intolerable in a civilized community.

102. The actions of the Defendants were the cause of the Plaintiff's distress.

103. The emotional distress suffered by the Plaintiff was severe and of such a nature that no reasonable person could be expected to endure it.

104. Because of the actions and inactions of the Defendants the Plaintiff has suffers proximate, consequential and extreme damages.

**COUNT XII: 28 U.S.C. § 1983,**
**BREACH OF CONTRACT**

105. Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

106. A valid contract existed between Plaintiff and Defendant, the skilled nursing facility known as "WB," which was established by the admission agreement that Plaintiff allegedly signed and which the Legacy refuses to provide to her after multiple requests, allegedly signed upon entering the facility, which stipulated that Legacy would adhere to federal and state regulations governing nursing home operations, including the Federal Nursing Home Reform Act and Illinois Nursing Home Care Act, as well as other laws inherent.

107. The contract specifically required Defendant to provide a standard of care that includes respecting Plaintiff's rights to privacy, dignity, and to be free from unwarranted restraints and seclusion, as well

as access to the community and personal autonomy, in accordance with 42 USC §1396r(c) and the Illinois Nursing Home Care Act.

108.    Defendant breached this contract by unlawfully imposing restrictions on Plaintiff's mobility and community access without medical justification, as evidenced by the facility's use of a fictitious medical record entry to deny Plaintiff community access and mobility, contrary to the medical opinion of the attending physician who found no medical necessity for such restrictions.

109.    Defendant further breached the contract by failing to adhere to the required standard of care and resident rights by retaliating against Plaintiff for filing complaints with the Illinois Department of Public Health, as demonstrated by the sudden imposition of escorted trips only and the subsequent unavailability of staff to provide said escorts, effectively confining Plaintiff to the facility.

110.    As a direct and proximate result of Defendant's breaches, Plaintiff suffered significant harm, including emotional distress, exacerbation of health conditions, and deprivation of personal liberty and autonomy.

111.    The actions of Defendant, as described above, not only breached the explicit terms of the contract but also the implied covenant of good faith and fair dealing inherent in all contracts under Illinois law.

112.    Plaintiff has performed all conditions, covenants, and promises required on Plaintiff's part in accordance with the terms and conditions of the contract, except those obligations Plaintiff was prevented or excused from performing due to Defendant's conduct.

113.    Plaintiff seeks all remedies available under the law, including but not limited to compensatory damages for the physical, emotional, and psychological harm suffered, as well as any punitive damages that are found to be appropriate due to the willful and malicious nature of Defendant's conduct.

114.    Because of the actions and inactions of the Defendants the Plaintiff has suffers proximate, consequential and extreme damages.

### COUNT XIII: 28 U.S.C. § 1983, NEGLIGENCE

115.    Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

116.    Defendant owed a duty of care to Plaintiff to provide a safe environment, appropriate medical care, and to uphold the rights and well-being of Plaintiff as a resident under their care.

117.    Defendant breached this duty of care by failing to provide adequate supervision and by allowing unauthorized personnel access to Plaintiff's medical records, thereby compromising Plaintiff's privacy and safety.

VERIFIED COMPLAINT        *Heidi K.. Erickson v IDPH, Legacy Health Care et al*

118.    On or about July 1st, 2025, Defendant restricted Plaintiff's access to the community without a valid medical justification as documented falsely in medical records, directly contravening the advice of Plaintiff's physician who did not deem such restrictions necessary.

119.    Defendant also breached their duty of care by failing to prevent and address the unauthorized dissemination of Plaintiff's sensitive medical information, leading to public disclosure of private health details.

120.    As a direct and proximate result of Defendant's negligence, Plaintiff suffered severe emotional distress, exacerbation of pre-existing medical conditions including Resistant Hypertension (RHT), and was deprived of necessary therapeutic activities and personal freedoms.

121.    The actions of Defendant, including the fabrication of medical records and the imposition of unwarranted restrictions, were both negligent and deliberate, aimed at covering up the inadequate care and mismanagement within the facility.

122.    Plaintiff's repeated complaints about these issues, including the formal complaints filed with the IL Dept of Health, were met with further negligence and retaliatory actions by Defendant, exacerbating the harm suffered by Plaintiff.

123.    The negligence of Defendant has caused Plaintiff significant physical and emotional pain, further medical complications, and has impeded Plaintiff's recovery and rehabilitation process.

124.    The cumulative effect of these negligent acts has materially diminished Plaintiff's quality of life and directly contravened the standards of care required by law and expected of a skilled nursing facility licensed to operate under federal and state healthcare programs.

125.    Because of the actions and inactions of the Defendants the Plaintiff has suffers proximate, consequential and extreme damages.

### COUNT XIV: 28 U.S.C. § 1983,
### VIOLATION OF ILLINOIS NURSING HOME CARE ACT

126.    Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

127.    The Illinois Nursing Home Care Act, 210 ILCS 45/2-104, mandates that residents in nursing facilities are entitled to be free from abuse and neglect and ensures the protection of residents' rights, including the right to dignity, privacy, and humane care.

128.    Defendant, by actions and omissions at the skilled nursing facility known as Legacy, has violated the Illinois Nursing Home Care Act by engaging in conduct that constitutes both abuse and neglect of the Plaintiff.

129.    Specifically, Defendant has unlawfully restricted Plaintiff's mobility and access to the community, which is a fundamental right under the Illinois Nursing Home Care Act. Despite medical approval for

VERIFIED COMPLAINT          *Heidi K.. Erickson v IDPH, Legacy Health Care et al*

Plaintiff to attend community events, including a significant event at Lincoln Park Zoo, Defendant failed to provide necessary support and staffing, effectively isolating Plaintiff within the facility.

130.    Furthermore, Defendant has created and utilized false medical records as a pretext to justify the unlawful restrictions placed on Plaintiff's mobility and community access. This act of fraudulently documenting a medical condition that was non-existent represents a direct violation of the Act's provisions against abuse.

131.    Defendant's actions have also extended to retaliatory measures against Plaintiff for exercising the right to file grievances. After Plaintiff filed complaints regarding the facility's conduct, Defendant intensified the restrictions on mobility and further isolated Plaintiff by removing personal property, specifically a stationary bike essential for Plaintiff's physical therapy.

132.    Additionally, Defendant has failed to adhere to the procedural requirements of the Illinois Nursing Home Care Act by not providing Plaintiff with timely and proper notice regarding changes in care and restrictions, further evidencing a pattern of neglect and abuse.

133.    The cumulative effect of Defendant's actions has not only infringed upon Plaintiff's rights under the Illinois Nursing Home Care Act but has also caused significant emotional and physical distress to Plaintiff, exacerbating existing health conditions and impeding recovery and rehabilitation.

134.    Each of these actions by Defendant, individually and collectively, constitutes a breach of the duties imposed by the Illinois Nursing Home Care Act, warranting relief and remediation for Plaintiff as prescribed by law.

135.    Because of the actions and inactions of the Defendants the Plaintiff has suffers proximate, consequential and extreme damages.


## VII. DEMAND

**WHEREFORE**, Plaintiff respectfully prays this Court:

A. Grant judgment in favor of Plaintiff on all claims and for remedies sought in each claim;

B. Issue a judicial determination of the rights, duties, and obligations of the parties hereto;

C. Enjoin Defendant from continuing to violate Plaintiff's rights under the Federal Nursing Home Reform Act, specifically prohibiting any further unlawful seclusion, unnecessary restraint, wrongful transfer, or discharge;

D. Award Plaintiff actual damages in an amount to be determined at trial, including compensation for emotional distress, pain and suffering, and any costs incurred due to Defendant's actions;

E. Grant Plaintiff the maximum economic, non-economic, actual, statutory, emotional, general, special, punitive, and other damages available under 42 USC § 1983, 42 USC § 1395i-3, 42 USC § 1396r, and the Illinois Nursing Home Care Act, including statutory damages where applicable;

VERIFIED COMPLAINT          *Heidi K.. Erickson v IDPH, Legacy Health Care et al*

F. Award Plaintiff attorney fees, 28 U.S.C. § 1988(b), with the appropriate multiplier, plus costs and expenses of litigation, pursuant to the provisions of the applicable statutes which allow for the recovery of such fees;

G. Order Defendant to provide a full and complete copy of Plaintiff's medical records in a 3-ring binder(s)and any other documents relevant to Plaintiff's stay and rehabilitation at the facility;

H. Require Defendant to undergo a compliance audit with respect to the Federal Nursing Home Reform Act and the Illinois Nursing Home Care Act to ensure adherence to all legal requirements and protections for residents;

I. Award Plaintiff such other and further relief as the Court deems just and proper.

**VIII  JURY DEMAND**

PLAINTIFF HEREBY DEMANDS A JURY ON ALL TRIABLE MATTERS.

Respectfully Submitted, *Heidi K. Erickson*

By signature herein I attest under the pains and penalties of perjury the facts herein are true.

Dated: Chicago, IL Heidi Kristine Erickson, *pro se*  /s H.Erickson  2/2/26

### *CERTIFICATE OF SERVICE*

Plaintiff Heidi K. Erickson, *pro se* files her Complaint in the ILND and by the ECF/MC files along with this document a Civil Action Cover Sheet, Motion For IFP and an Appearance pro se.M

| | |
|---|---|
| Plaintiff | Heidi Erickson,<br>482 Dekalb, IL 60115, |
| Defendants | Defendants', Jointly and Severally |

State of Illinois, Office of the Illinois Attorney General, Kwame Raoul
115 South LaSalle St.
31st Floor
Chicago, IL 60603

Sameer Vohra, Secretary, Illinois Department of Public Health,
535 W. Jefferson St.,
Springfield, IL 62761,

Legacy Health Care d/b/a Warren Barr, and
Rani Stutz, Vice President of Operations, Legacy Health Care,
3450 Oakton St.
Skokie, IL 60076

Warren Barr, of Lincoln Park, 2732 N. Hampton Ct. Chicago, IL 60614
Eli Batt, Director of Warren Barr of Lincoln Park.

### *IX  EXHIBITS LIST*

### *ORDERS 1/21/26*

VERIFIED COMPLAINT          *Heidi K.. Erickson v IDPH, Legacy Health Care et al*

23

*EXH. 1  INVOLUNTARY DISCHARGE PG.1, and PAGES 4/7*

*EXH. 2  MEDICAL RECORD FRAUD, PAGE 361*

*EXH.3a Email Heidi Erickson challenging INVOLUNTARY DISCHARGE and filing in ILND*

*EXH. 3b Email Rani Stutz, Legacy HC*

*EXH 3c  Email Ombudsman*

VERIFIED COMPLAINT         *Heidi K.. Erickson v IDPH, Legacy Health Care et al*

*ORDERS 1/21/26*

*EXHIBIT 1, 1/7*

State of Illinois
Illinois Department of Public Health

## Notice of Involuntary Transfer or Discharge and Opportunity for Hearing for Nursing Home Residents

(For Assisted Living forms, visit www.xxx.illinois.gov)

### FACILITY INFORMATION

| | | |
|---|---|---|
| Warren Barr Lincoln Park | 2732 N Thumper CT | Cook County |
| Facility Name | Address | |
| 773-248-6000  773-423-0300 | Fluatlgwarrenberfin.com | 8/14/2b |
| Phone Number  Fax Number | Email Address | Date of Notice to Resident |

### RESIDENT INFORMATION

| | | |
|---|---|---|
| Heidi Erickson | 11/3/1993 | Self |
| Resident's Name | Resident's Date of Birth | Resident's Representative Name |
| 13 HICKORY GRV, Macomb IL 61455 | | (312) 617-2801 |
| Resident's Representative Address | | Resident's Representative Phone Number |

☑ FEDERAL PROCEEDING ☐ STATE PROCEEDING    EMERGENCY TRANSFER OR DISCHARGE ☐ YES ☑ NO

☑ **FEDERAL PROCEEDING.** This facility admits medicare and Medicaid or Medicaid residents and is federally certified and state licensed, or this facility admits only Medicare or Medicaid residents and is federally funded. This facility seeks to transfer or discharge you pursuant to the regulations of the Health Care Financing Administration for states and long-term care facilities, 42 CFR 483.15 ("federal regulations"). As required in your clinical record in accordance with Section 483.15(c) of the federal regulations, the reason for this proposed transfer or discharge is:

☐ your welfare and needs cannot be met in this facility, as documented in your clinical record by your physician, 483.15 (c)(1)(i)(A).

☐ your health has improved sufficiently so you no longer need the services provided by this facility, as documented in your clinical record by your physician, 483.15 (c)(1)(i)(B);

☑ the safety of individuals in this facility is endangered, 483.15 (c)(1)(i)(C).

☐ the health of individuals in this facility would otherwise be endangered, as documented in your clinical record by your physician, 483.15 (c)(1)(i)(D);

☐ you have failed, after reasonable and appropriate notice, to pay for your stay at this facility, 483.15 (c)(1)(i)(E); or

☐ this facility ceases to operate, 483.15 (c)(1)(i)(F).

On the date of transfer or discharge, you will be relocated to:

Facility/Person: Winston Manor

Address: 2155 W Pierce Ave, Chicago IL 60622

Telephone: 773-262-2068

Pursuant to Section 483.15(c)(7) of the federal regulations, this facility will provide sufficient preparation and orientation to ensure your safe and orderly transfer or discharge from this facility.

☑ A copy of the facility's bed hold policy has been given to the resident or their responsible party, along with a copy of this notice.

Submit all forms to: Illinois Department of Public Health, Division of Administrative Hearing Review, 535 W. Jefferson St., Springfield, IL 62761 Email: DPH.xxx or fax: 630-954-3502.

Page 1 of 7

IOCI 26-25 1848

*EXHIBIT 1  1/7*

State of Illinois
Illinois Department of Public Health

**Notice of Involuntary Transfer or Discharge and Opportunity for Hearing for Nursing Home Residents**

(for Assisted Living Forms, visit www.iph.illinois.gov)

☐ STATE PROCEEDING. This facility admits only private-pay residents and is state-licensed. This facility seeks to transfer or discharge you pursuant to the Nursing Home Care Act, 210 ILCS 45/1-117, et seq. ("state law"). You will be responsible for securing shelter and health care for yourself. You may seek relocation assistance from the Illinois Department of Public Health, including information on alternative placements.

As discussed with _____ on ____ ____ and as documented in your clinical record pursuant to Section 3-402 of the state law, the reason for this proposed transfer or discharge is:

☐ medical reasons, as documented in your clinical record by your physician, 210 ILCS 45/3-401(a);

☐ your physical safety, 210 ILCS 45/3401(a);

☐ the physical safety of other residents, the facility's staff, or visitors, 210 ILCS 45/3-401(a); or

☐ late payment or nonpayment for your stay, 210 ILCS 45/3-401(a)

The resident or his party _____ has the right to pay the amount of the bill in full up to the date the transfer or discharge is to be made, and then you may avoid having the right to remain in the facility.

To obtain the name of a local representative of the Illinois Long term Care Ombudsman Program in your community, you may call the Illinois Department on Aging, Senior Helpline, toll-free at 800-252-8966, or write to the Illinois Department on Aging, One Natural Resources Way, Suite 100, Springfield, IL 62702-1271.

The agency responsible for the protection and advocacy of the developmentally disabled or mentally ill individuals is Equip for Equality, Inc.

20 N. Michigan Ave., Suite 300, Chicago, IL 60602, 312-341-0022 (Voice) 800-537-2632 (TTY) 800-610-2779, (Fax) 312-341-0295.

300 East Main St., Suite 18, Carbondale, IL 62901, 618-457-7060 (Voice) 800-758-6886 (TTY) 866-418-7759, (Fax) 618-457-7985.

1 West Old State Capitol Plaza, Suite 500, Springfield, IL 62701, 217-544-0464, (Voice) 800-758-0464, (TTY) 866-610-2779, (Fax) 3124340042.

The effective date of the proposed transfer or discharge is 5/14/25

The person who will supervise your transfer or discharge is:

Name: Sabrina Sanchez

Address: 2732 N Hampden Ct Chicago IL 60614

Telephone: 773-262-2066

Email: Sabrina.sanchez@warnerbenison.com

Submit at home to: Illinois Department of Public Health, Division of Administrative Hearing Process, 535 W. Jefferson St., Springfield, IL 62761, Email: dph.administrativehearings@illinois.gov or fax 833-464-2502

Page 2 of 7

Exh.1 (2/7)



**State of Illinois**
**Illinois Department of Public Health**

**Notice of Involuntary Transfer or Discharge and**
**Opportunity for Hearing for Nursing Home Residents**
(for Assisted Living forms, visit www.ilga.illinois.gov)

**APPEAL RIGHTS**

Regardless of whether the facility's proposed action is under federal regulations or state law, you have the right to appeal the decision to transfer or discharge you.

If you think you should not have to leave this facility, you may file a Request for Hearing with the Illinois Department of Public Health within 10 days after receiving the notice.

If you request a hearing, it will be held not later than 10 days after your request, and you generally will not be transferred or discharged during that time. If the decision following the hearing is not in your favor, you generally will not be transferred or discharged prior to the expiration of 30 days following receipt of the original Notice of Transfer or Discharge. A form to appeal the facility's decision is attached. If you have questions, call the Illinois Department of Public Health, Administrative Hearing Section, at 217-557-6502 or 217-327-8866.

A copy of this notice was placed in your clinical record and a copy was transmitted to the Illinois Department of Public Health, to you, to the long-term care ombudsman, to your representative or a family member, and if your care is paid for, in whole or in part, through Title XIX, to the Illinois Department of Healthcare and Family Services on _____.

**If you are a Williams/Colbert Class Member,** you may be entitled to certain benefits under the consent decrees, which give you the right to receive information about housing and service options before being discharged from the facility. You may have already been engaged with a Williams/Colbert provider, called a "Prime Agency," who is required to support you in the discharge process. You may contact them through your facility or on your own if you already have their contact information, for linkage to housing and services if you have been assessed and recommended for a community-based setting. You may also request that the Prime Agency provide an assessment and related services after discharge. Prime Agency contact information and facility assignment information are on the Illinois Department of Human Services (DHS) Olmstead web page at https://www.dhs.state.il.us/page.aspx?item=125044. If you are a class member, a list of community services that may be available to you as a class member will be provided before or at the point of your discharge from the facility. If you are a Williams/Colbert Class Member, answers to questions about your rights can be found by calling the IDHS Williams/Colbert hotline 312-793-7205 or emailing ILOA.jbmsximus.com prior to your discharge from the facility.

Printed name of facility's agent: _____ Rara Sluz _____

Agent's Title: _ Vice President of Operations _    Facility agent's email: rslutz@legacyhc.com

Signature of facility's agent: _____    Date: 8/14/25

Printed name of facility's attorney: _ Meyer Magence _

Attorney's email: meyerhtw@aol.com    Telephone: 847-372-7311

Submit all forms to: Illinois Department of Public Health, Division of Administrative Hearing Review, 535 W. Jefferson St., Springfield, IL 62761; Email: DPH.AdministrativeHearings.gov or fax: 630-934-3502.

Printed by Authority of the State of Illinois  2024

Page 3 of 7

**Exh.1 (3/7)**

VERIFIED COMPLAINT        *Heidi K.. Erickson v IDPH, Legacy Health Care et al*

28

State of Illinois
Illinois Department of Public Health

**Involuntary Transfer or Discharge Request for Hearing**

**INSTRUCTIONS**

If you wish to contest the proposed involuntary transfer or discharge, complete this form and submit to: Illinois Department of Public Health, Division of Administrative Hearing Review, 535 W. Jefferson St., Springfield, IL 62761. Email: DPH.AdminHearings@illinois.gov; Fax: 630-954-3512 within 10 days after receiving the Notice of Involuntary Transfer or Discharge.

**FACILITY INFORMATION**

| | | |
|---|---|---|
| Warren Barr Lincoln Park | 3732 N Hampden CT | Cook |
| Facility Name | Address | County |
| 773-248-4000 | 7734220300 | ebatt@warrenbarr-lp.com | 8/14/25 |
| Phone Number | Fax Number | Email Address | Date of Notice to Resident |

**RESIDENT INFORMATION**

| | | |
|---|---|---|
| Heidi Erickson | 11/8/1963 | Self |
| Resident's Name | Resident's Date of Birth | Resident's Representative Name |
| 13 HICKORY GRV, Macomb IL 61455 | | (312) 917-2801 |
| Resident's Representative Address | | Resident's Representative Phone Number |

I request a hearing, within 10 days of receipt of this request by the Illinois Department of Public Health, to contest the Notice of Involuntary Transfer or Discharge received by **SELF** on **8-14-25**

Printed name of person requesting a hearing: **HEIDI K ERICKSON**

Signature of person requesting a hearing: _[signature]_     Date: **8/22/25**

Relationship to the resident: **SELF**

Email address: **heidi.kristine.Erickson@gmail.com**

Printed name of resident's attorney (if applicable): _____

Resident's attorney's address: _____

Resident's attorney's email: _____

Resident's attorney's phone number: _____

emailed To: mauricio.cabrera@cityofchicago.org
DPH.AdminHearings@illinois.gov
ebatt@warrenbarr-lp.com
sabrina.sanchez@warrenbarr-lp.com
Attorney Ron Stutz meyerlaw@aol.com

Submit all forms to: Illinois Department of Public Health, Division of Administrative Hearing Review, 535 W. Jefferson St., Springfield, IL 62761; Email: DPH.AdminHearings@illinois.gov or Fax: 630-954-3512

Printed by Authority of the State of Illinois    IOC 30-25

*EXH. 1  4/7*

VERIFIED COMPLAINT          *Heidi K.. Erickson v IDPH, Legacy Health Care et al*

## Nursing Home Resident Applicant Fingerprint Consent Form
### (Non-Pilot Submission)

Pursuant to Public Act 096-0172, nursing home facilities are required to arrange for the fingerprinting of residents they determine to be identified offenders. This form is to be completed by facilities seeking to have a Fee Applicant fingerprint based criminal history record check completed in accordance with the Act. This form is designed to capture the necessary information required by live scan vendors to ensure the fingerprints are submitted properly. The live scan vendor will use the applicant information contained on the form to help confirm the identification documentation provided by the applicant before the fingerprints are taken. This document also serves as a consent form. Consequently, the form must be signed by the applicant in order to authorize the release of any criminal history record information that may exist regarding the applicant. Once the form is completed and signed, the original copy is to be retained at the files of the nursing home facility. One copy is to be provided to the live scan fingerprinting vendor and one copy is to be given to the applicant. The applicant is required to undergo an Illinois State Police and Federal Bureau of Investigation (nationwide) fingerprint based criminal history record information inquiry if the nursing home has deemed the applicant to be an identified offender. The results of both inquiries will be forwarded to the Illinois State Police Division of Internal Investigation by the Bureau of Identification.

| Facility Information | | |
|---|---|---|
| Facility Name (Response will not be valid to be filed) | | Facility ID: |
| Contact Person Name: | | Contact E-mail and Phone #: |

| Applicant Information | | | | |
|---|---|---|---|---|
| Name: | Sex: | Race: | Date of Birth: | |
| SSN (If no SSN contact IDPH): | Height: | Weight: | Eye Color: | Hair Color: | Place of Birth: |

| Livescan Citizen Appointment Information | | |
|---|---|---|
| Live Scan Fingerprint Vendor Name: | Address: | |
| Phone Number: | Appointment Date: | Appointment Time: |
| Requesting Agency ORI Identifier: IL 920/012 (ISP/DII) | Purpose Code: RNP (Resident Non-Pilot) | Request Type: State and FBI |

Revised 5/2024

1 Exh.1 (5/7)



## Privacy Act Statement

Authority: The FBI's acquisition, preservation, and exchange of fingerprints and associated information is generally authorized under 28 U.S.C. 534. Depending on the nature of your application, supplemental authorities include Federal statutes, State statutes pursuant to Pub. L. 92-544, Presidential Executive Orders, and federal regulations. Providing your fingerprints and associated information is voluntary; however, failure to do so may affect completion or approval of your application.

Principal Purpose: Certain determinations, such as employment, licensing, and security clearances, may be predicated on fingerprint-based background checks. Your fingerprints and associated information/biometrics may be provided to the employing, licensing, or otherwise responsible agency and/or the FBI for the purpose of comparing your fingerprints to other fingerprints in the FBI's Next Generation Identification (NGI) system or its successor systems (including civil, criminal, and latent fingerprint repositories) or other available records of the employing, licensing, or otherwise responsible agency. The FBI may retain your fingerprints and associated information in NGI after the completion of this application and, while retained, your fingerprints may continue to be compared against other fingerprints submitted to or retained by NGI.

Routine Uses: During the processing of this application and for as long thereafter as your fingerprints and associated information/biometrics are retained in NGI, your information may be disclosed pursuant to your consent, and may be disclosed without your consent as permitted by the Privacy Act of 1974 and all applicable Routine Uses as may be published at any time in the Federal Register, including the Routine Uses for the NGI system and the FBI's Blanket Routine Uses. Routine uses include, but are not limited to, disclosures to: employing, governmental or authorized non-governmental agencies responsible for employment, contracting, licensing, security clearances, and other suitability determinations; local, state, tribal, or federal law enforcement agencies; criminal justice agencies; and agencies responsible for national security or public safety.

Applicant Consent

By signing below, I acknowledge and hereby authorize the release of any criminal history record information that may exist regarding me from any agency, organization, institution, or entity having such information on file. I am aware and understand that my fingerprints may be retained and will be used to check the criminal history record information files of the Illinois State Police and/or the Federal Bureau of Investigation, to include but not limited to civil, criminal and latent fingerprint databases. I also understand that if my photo was taken, my photo may be shared only for employment or licensing purposes. I further understand that I have the right to challenge any information disseminated from these criminal justice agencies regarding me that may be inaccurate or incomplete pursuant to Title 20 Code of Federal Regulation 16.34 and Chapter 20 ILCS 2630/7 of the Criminal Identification Act. For instructions please visit: https://www.isp.illinois.gov/ForcariIdentification/MyRecord

Applicant Name (printed):

Applicant Name (signature):                                         Date:

**THIS SIGNED FORM MUST BE RETAINED BY THE AGENCY FOR AT LEAST TWO YEARS.**

F Exh.1 (6/7)



| Name: | Bed Hold and Readmission | |
|---|---|---|
| Adopted: 1/16/17 | Reviewed: 6/26/25 | Revised: 6/26/25 |

**Policy Statement**

It is the facility's policy to adhere to the federal regulation on bed hold and on readmission of resident transferred out of the facility.

**Procedures**

1. The facility must inform the resident or family members being transferred of the duration of bed hold in writing.
2. The facility must permit residents, who were transferred for hospitalization or therapeutic leave, and whose absence exceeds the bed hold period as defined by the State plan, to return to the facility in the first available bed.
3. The resident being readmitted might not go back to the same room that the resident previously resided.
4. For a resident transferred out because the resident is a danger to the safety and health of others, the facility may not allow the resident to be readmitted if it will endanger the health and safety of others in the facility.
5. Additionally, if the resident was found to have committed a crime, the facility may not allow the resident back.
6. Moreover, if the resident or representative expressed refusal to return to the facility after hospitalization and decided to get discharged to the community or another facility, in accordance with the federal regulation will discharge the resident with return not anticipated.

In the event the resident decided to come back to the facility after being discharged to the community or another facility with return not anticipated, the resident will be considered as a potential new admission. The facility will exercise its rights protected by federal regulation F838 (Facility Assessment) to assess and determine their capability to care for the resident they admit and therefore will decide if the facility will accept the potential new admission.

Similarly, under F622 federal regulation, the facility should assess a potential new admission properly and should not admit any resident whose needs the facility cannot meet.

7. In accordance with federal regulation governing Facility Assessment, the facility will assess potential admissions for the appropriate care needs and if the resident's needs cannot be taken care by the facility staff, the facility will not accept the resident as a new admission.

Exh.1 (7/7)

VERIFIED COMPLAINT          *Heidi K.. Erickson v IDPH, Legacy Health Care et al*

32

**EXHIBIT 2    FRAUDULENT MEDICAL RECORD PG.361 WB**



**WB MEDICAL RECORDS FRAUD PG.361**

*Exh. 2*

*EXHIBIT 3a-b-c EMAILS*

Q   in:sent maur        ✕   ⇌        ⑦  ⚙  ◆  ⠿   Ⓗ

←   ☐  ⊘  🗑  │  ✉  ⊡  ⋮        ‹  ›      📅

### Heidi Erickson, request for hearing (attached) and discovery to follow   Inbox ×        ↕  🖶

**Heidi** <heidi.kristin...   ⊡  Aug 22, 2025, 2:12PM   ☆  😊  ↩

to Mauricio, DPH.AdminHearings, meyerlaw, ebatt, sabrina.sanchez, rani.s ▾

DPH Division Administrative Hearing Review
535 W. Jefferson St. Springfield, IL
RE: Appeal Involuntary Trans/Discharge Federal Proceedings and
Request for Discovery Heidi K. Erickson v Warren Barr LP

Dear Hearings Review
Please Find attached 3 pictures of Appeal/Hearing Request from a
Involuntary Trans/Discharge from facility Warren Barr, LP

If this case is assigned to a federal court (as the paperwork apoears to
indicate) I prefer the ILND at 219 Dearborne Chicago, IL and not in
conducted in Springfield as I have a right to be present during said hear
in a civil matter and to present evidence and witnesses, which cannot b
done in Springfield IL as there is too mu h burden with transportati I n, a
availability of witnesses who are in Chicago IL.

Request is made for my appearance in Chicago as Springfield presents
such a burden for me, my witnesses and their time and expenses in
travel.

In addition, I
Request is made for Discovery upon the facility Warren Barr. LP. my

*EXH.3a*

VERIFIED COMPLAINT        *Heidi K.. Erickson v IDPH, Legacy Health Care et al*        34



Received,

Thank you,

- *Mauricio Cabrera*
**Elder Protective Investigator**
**Ombudsman**
**O: (312) 746-7546**
**F: (312) 746-6506**

**From:** Rani Stutz <rstutz@legacyhc.com>
**Sent:** Thursday, August 14, 2025 12:04 PM
**To:** Mauricio Cabrera <Mauricio.Cabrera2@cityofchicago.org>; Berr
Cobbins <Bernard.Cobbins@cityofchicago.org>
**Cc:** Eli Batt <ebatt@warrenbarr-lp.com>
**Subject:** Warren Barr Lincoln Park: 30 day IVD, Heidi Erickson

[Warning: External email]

Attached you will find the 30 day IVD being served today to resident, Heidi
Erickson.
This is related to her refusal to cooperate with the identified offender regulat
Please let me know if you need any further information.

Exh.3b

VERIFIED COMPLAINT          *Heidi K.. Erickson v IDPH, Legacy Health Care et al*



Mauricio,

But the documents says Fee Applicant - this is about my application to pay a fee. So I don't see why I am paying any fees? Is this what they do before they start billing me? Turn me into a Fee Applicant?

But I am not being billed my insurance is paying for my 'short-term care' and as far as the attorney said she agreed with the 1-90 days medicaid pays.

I suppose Eli is delaying my recept of the alleged Medicare determination because it doesn't exist and that's proof of their misrepresentations. If it does exist, which I doubt, it only helps proce the fact so I can provide it to the civil court. My Judge is the Chief and if it exists it would prove the damages and need of payment to Warren Barr, so in fact Eli's withholding it is actually hurting/ preventing Warren Barr from being paid, because I am sure the judge is assuming it is being paid by Medicare.

On Tue, Aug 12, 2025, 4:00 PM Mauricio Cabrera <Mauricio.Cabrera2@cityofchicago.org> wrote:

Hi Heidi,

-Unfortunately, the fingerprinting is mandatory, when a Nursing Home request one; typically, a company will go to the facility to take them in person.

Exh.3c